MARSH *v.* THE STATE, 30 Miss. Rep., 627.

### HOMICIDE.

Upon the challenge of a juror it is proper for the court to interrogate and try him as to whether he has formed or expressed an opinion in relation to the matter in issue, and to reject him if found to have formed such opinion.

It is the duty of the court to see that an impartial jury is empanelled, and that it is composed of persons above all exception.

Error to Warren circuit court. GUION, J.

The plaintiff in error was indicted in the court below for the murder of one William J. Sims, was tried by a jury, and convicted of manslaughter in the first degree.

On the trial, the persons who were summoned on the special *venire* as jurors, were called and sworn to answer questions, and were examined by the court as to their competency to try the cause, without their first being tendered to or challenged by either the state or the prisoner. The court, after such examination, rejected the juror or tendered him, as it had been determined he was incompetent or not. To this the prisoner objected and tendered his bill of exceptions.

*W. A. Lake* for plaintiff in error.

The record of this case shows that the prisoner was convicted of manslaughter in the first degree, and sentenced to seven years' confinement in the penitentiary. A motion was made for a new trial which being overruled, the testimony is embodied, and a bill of exceptions filed. In the progress of the trial, three bills of exceptions were filed to the empanelling of the petit jury. They are numbered in the record two, three, and four, and are considered by the counsel of the prisoner as showing manifest error in the selection of a jury by whom he was tried. The objection exhibited by these bills of exceptions is, that John Lyman, John Mixen, and James C. Wright were severally introduced as jurors and sworn to answer questions, and actually questioned as to their qualifications to serve as jurors, without being first challenged by the district attorney. We think that both in England and America this practice is condemned by the highest judicial authorities of both countries. Chief Justice Marshall ruled in Burr's trial, " that unless the challenge is

made, it will be improper to draw out any expressions from the juror."

But it is needless to call the attention of the court to authorities out of the State of Mississippi, as our own high court have expressly adjudicated the point. See The State v. Flower, Walker R., 318; The State v. King, 5 How. R., 730.

These decisions are full to the point and must be regarded as decisive of it. It cannot be urged that the answers would be the same without a challenge that they would be if the juror were challenged, and that, therefore, the prisoner is not damaged by the omision. The law presumes the prisoner injured whenever there is a failure to give him the benefit of the law applicable to his case. He was entitled to have the persons composing the panel tendered him as jurors, unless they were challenged by the state and their challenge sustained by proper proof. It is the challenge that gives the right to interrogate the persons composing the panel, and the turning away one of the *venire*, because he had said he had both formed and expressed an opinion in reference to the guilt or innocence of the accused when he was not challenged, was as unjust to the prisoner and as much a misapplication of the law as if he had been made to stand aside without interrogation or proof of any sort.

Take, for example, the case of John Mixen, contained in the third bill of exceptions. He was one of the persons returned on the special *venire*. When his name was called, he appeared, and was sworn to answer questions, and was actually examined as to his qualifications by the attorney for the state, and rejected by the court as incompetent to serve on the panel without being challenged at all. Now, if I am right in asserting that the law requires that he should have been challenged before any proof of his incompetency could be heard or adduced, then it follows that he was rejected as a juror, and the benefit of his services denied to the prisoner, without any proof of his incompetency to serve.

In the case of King v. The State, already referred to, the court decided the point with distinctness, although the bill of exceptions did not set it forth distinctly. In this case, the bills of exceptions bring the point before the court with absolute

distinctness, and we ask the application of the rule as enunciated in the cases reported in Walker and Howard, above mentioned, and that a new trial may be granted.

*D. C. Glenn,* attorney-general.

Cited and relied on, Lewis v. The State, 9 S. & M., 115; Sam v. The State, 13 ib., 190; McCarty v. The State, 26 Miss. R., 382; People v. Damon, 13 Wend., 354; 6 Humph, 249. He also argued the case orally, as involving a matter of importance in practice.

HANDY, J.:

The only question raised in this case is, whether it was competent for the circuit judge to examine the jurors summoned to try the accused, and before they were challenged either by the state or the accused, whether they had formed or expressed an opinion as to his guilt or innocence of the charge for which he was about to be tried.

Whatever may have been the rule in England upon this subject, we think that the principles sanctioned by this court fully warrant the course pursued by the court below in this case.

In the first place, the practice is sanctioned by numerous cases, that upon the challenge of a juror, it is proper *for the court* to interrogate and try him as to whether he has formed or expressed an opinion in relation to the matter in issue, and to reject him if found to have formed such an opinion.

It is also held to be the duty of the court to see that an impartial jury is empanelled, and that it is composed of men above all exception. Lewis v. The State, 9 S. & M., 115; Sam v. The State, 13 ib., 190; McCarty v. The State, 26 Miss., 302. In the case of Lewis v. The State, the court below discharged a juror without challenge from either party, and after having examined him and found that he had not formed or expressed an opinion as to the issue, it being ascertained from his own statement made as he was about to be sworn, that he had conscientious scruples with regard to finding any man guilty of murder; and the action of the judge was approved by this court, and held not to be error upon the principle just stated.

If it was proper for the court, of its own motion, to reject a

juror under such circumstances, on the ground that it was its duty to see that an impartial jury, composed of men free from all exceptions, was empanelled, surely it was not error for the court to interrogate the juror as to his competency before he was sworn or tendered to and accepted by the parties, and to set him aside when it was shown that he had formed an opinion as to the issue to be tried.

The course adopted in this case has been very generally adopted, as the practice in this state, in trials for capital offenses, if, indeed, it is not the established practice; and it appears to us to be commended by its decided tendency to secure the selection of jurors, in such cases, as free as possible from all bias or prejudice—an object highly conducive to the just policy of the state, and protective especially of the rights and safety of the accused.

Under such circumstances, and where no injury is shown to have been done to the accused, we are not disposed to hold that the practice is illegal, and that the course pursued by the court below is ground for reversing the judgment.

The judgment is affirmed.